UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY K. SCHMAL, | ) | |
| | ) | |
| Plaintiff, | ) | 03 C 7733 |
| v. | ) | |
| | ) | Hon. Mark Filip |
| JO ANNE B. BARNHART | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves cross motions for summary judgment based on a closed factual record.

Plaintiff Beverly K. Schmal ("Schmal") seeks judgment as a matter of law or, alternately,

remand of the final decision of Defendant Jo Anne Barnhart, Commissioner of Social Security

("The Commissioner"). The Commissioner seeks affirmance of the decision. The decision,

which is set forth in the Administrative Law Judge's ("ALJ") decision, denied Schmal's

application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 416, 423 (2005). Schmal argues that the ALJ's decision to deny benefits should be reversed

because it is plagued by legal error and is not supported by substantial evidence. The Court

respectfully disagrees, and grants the Commissioner's motion, affirming the ALJ's decision and

denying Schmal's motion for summary judgment or remand.

## RELEVANT FACTS[1]

Schmal was represented by an attorney at her hearing on March 14, 2002. (D.E. 9 at 38-

39.) At that time, she was forty-seven years old (*id.* at 46) and had a high school diploma (*id.* at

47). She has a back condition that constitutes a severe impairment under the Social Security Act.

---

[1]     The relevant facts are taken from the certified copy of the administrative record as filed
before this Court (D.E. 9) and cited by both parties in their respective briefs.

(*Id.* at 32.) From 1995 until 1999, she worked as a telephone answering service operator. (*Id.* at 50, 112.) Schmal was fired from that job for excessive absenteeism, which she alleges was due to her back condition. (*Id.* at 50.) She claims that her back condition constitutes a disability under the Social Security Act.

## I. Medical Record Evidence

At the hearing, several exhibits were admitted into evidence, including medical records and opinions prepared and ordered by Schmal's treating doctors, Dr. Heyer (*id.* at 41-42, 232-39, 253-77) and Dr. Azaran (*id.* at 41-42, 281-88), as well as an opinion by a consultative examiner ("C.E."), Dr. Karri (*id.* at 41-42, 240-44), and opinions by two doctors who had reviewed Schmal's record, Drs. Patey and Madala (*id.* at 245-52). Additional testimonial evidence was presented at the hearing and included the opinion of Dr. Bianchin, a medical expert ("M.E.") who had reviewed Schmal's record, and the opinion of a vocational expert, as well as Schmal's own statements. (*Id.* at 38-120.) Following the hearing, the ALJ kept the record open so that Schmal could submit additional supporting evidence. (*Id.* at 18.) Schmal did not do so, but the Social Security Administration ("SSA") ordered and admitted to the record an additional C.E. opinion from Dr. McCrohan. (*Id.* at 18, 290-95.)

### A. Dr. Heyer

Dr. Heyer is an osteopath. (*Id.* at 22.) He first treated Schmal for back problems in December 1993, when she reported lower back pain radiating to her right leg. (*Id.* at 276-77.) Though Schmal saw Heyer once in 1997 for an unrelated ailment (*Id.* at 274), there are no records of any other visits until September 1999. (*Id.* at 273.) Schmal saw Heyer for her back pain eight times between September 1999 and June 2001. (*Id.* at 255-75.) The record includes Heyer's notes and records from these visits and the two impairment evaluation forms he

2

completed in May and October 2000. (*Id.* at 232-39, 253-77.) Each of these entries is labeled with Schmal's full name and her birth date. (*Id.*) Some entries, including the results of a magnetic resonance imaging ("MRI") and the record for the 1993 visits, are also labeled with her medical record number. (*Id.* at 238, 255, 258, 267, 276-77.)

These notes and forms reflect Schmal's statements to Heyer regarding the following: she had lower back pain radiating to her right side beginning in 1993 (*id.* at 233, 275); she was fired for absenteeism resulting from the pain (*id.* at 269); the pain was constant and always on the right side of her body (*id.* at 266, 268, 273-75); her pain was exacerbated by sitting (*id.* at 269); and pain relief was minimal (*id.* at 258, 266). The notes also record Heyer's observations of Schmal's antalgic gait (tending to alleviate pain) (*id.* at 236) and recurrent spasms in her lower back and right side and leg (*id.* at 237). The records include an MRI from May 2000, which revealed degenerative changes in the lumbar spine, a level sacral base, and scoliosis, and which is referenced in and attached to Heyer's second impairment form. (*Id.* at 238.) In his impairment forms, Heyer opined that Schmal was "unable to tolerate static positions or getting up from same," and "unable to stay put, lift, walk, etc. etc. without pain," but he did not specify Schmal's particular limitations. (*Id.* at 234, 237.)

In 1993, Heyer diagnosed Schmal with a back sprain and sciatica and prescribed Vicodin and stretching. (*Id.* at 276.) On the impairment forms in 2000, he diagnosed her with degenerative disk disease. (*Id.* at 234, 236.) Heyer prescribed various pain-killing medications from 1999 onward, including Tylenol #3, Tylenol #4 with codeine, Valium, Robaxin, Relafen, Zanaflex, Soma with codeine, and Flexeril. (*Id.* at 255-77.) Schmal told him that some of these medications made her too groggy. (*Id.* at 264, 275.) She refused two prescriptions due to lack of insurance (*id.* at 269), though she filled and refilled several others. (*Id.* at 256, 258-59.) Heyer

3

refused Schmal's last refill request, noting "overuse." (*Id.* at 254.) Heyer also recommended stretching (*id.* at 276-77), therapy, and, finally, surgical treatment by lumbar fusion (*id.* at 237, 255, 275) though he did not refer her to a surgeon. Schmal also refused several MRIs. (*Id.* at 261.)

### B. Dr. Patey and Dr. Madala

Upon request by the Social Security Administration ("SSA"), Dr. Patey reviewed Schmal's record as of November 2000, and he prepared a residual functional capacity ("RFC") opinion form. (*Id.* at 245-52.) He opined that Schmal could perform sedentary to light work, could stand and walk for up to two hours daily, and could sit for up to six hours if allowed to stretch after every two hours. (*Id.* at 245-52.) Upon request by the SSA, Dr. Madala reviewed the record as of March 28, 2000, and agreed with Dr. Patey's findings. (*Id.* at 245.) Neither Dr. Patey nor Dr. Madala considered the RFC findings to be significantly different than Dr. Heyer's findings. (*Id.* at 251.)

### C. Dr. Karri

Upon request by the SSA, Dr. Karri, a C.E., examined Schmal on March 21, 2001. (*Id.* at 240-244.) Karri's report reflects Schmal's complaints of intermittent back pain, constant left leg pain, the absence of tingling or numbness, and the ability to often perform various daily activities including laundry, child care, and dressing. (*Id.* at 240-43.) Karri's tests and observations revealed the following: Schmal showed no deficiencies as to reflexes, motor strength, or neurological function; she was able to get on and off the examination table without difficulty; she had mild difficulty standing and hopping; she had a normal grip; and she had a generally normal musculoskeletal range of motion, except for evidence of scoliosis in her lumbar spine and

4

tenderness in her right knee. (*Id.* at 241-42.) Karri diagnosed scoliosis and degenerative disk disease and expressed that further testing was not required. (*Id.* at 242.)

### D. Dr. Azaran

Dr. Azaran, an internist and specialist in nephrology (*id.* at 286.), treated Schmal only twice, in January and March 2002. (*Id.* at 287-88.) His records reflect Schmal's statements regarding her history of scoliosis and lower back pain radiating to her *left* side. (*Id.* at 283, 287.) His diagnostic testing revealed a positive Laségue sign[2], degenerative disk disease, and moderate kyphosis (a deformity of the spine), but no neurological deficits. (*Id.* at 283-85, 287.) He ordered an MRI of her lumbrosacral spine, which showed degenerative disk disease, but no herniations or fractures. (*Id.* at 281-82.) Azaran's RFC opinion noted substantial limitations on Schmal's ability to function even in sedentary jobs. (*Id.* at 283-86.) Azaran prescribed Vioxx and Fiorinal to Schmal. (*Id.* at 288.)

### E. Dr. McCrohan

After the hearing, on July, 2002, Dr. McCrohan, a C.E. and specialist in neurology, examined Schmal upon request by the SSA. (*Id.* at 289, 295.) McCrohan did not have access to Schmal's medical records. (*Id.* at 289.) McCrohan's opinion reflects Schmal's statements regarding the onset, severity, effects, and treatment of her pain. McCrohan noted Schmal's unremarkable history, antalgic gait, markedly limited ability to flex forward, and symmetric reflexes. (*Id.* at 289-95.) McCrohan recommended additional testing to determine whether Schmal was treatable or curable. (*Id.* at 290.) In her RFC opinion, McCrohan noted that Schmal

---

[2]     Laségue sign is an indication of a lower back disorder where the flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. *See Pope v. Shalala,* 998 F.2d 473, 478 (7th Cir. 1993) (citing Dorland's Illustrated Medical Dictionary 1523 (27th ed. 1988)); D.E. 9 at 24 n.1 ("The Laségue test helps doctors to distinguish between sciatic pain and hip impairment.").

could stand or walk for less than two hours of an eight hour workday, and that she would need to periodically alternate between sitting and standing. (*Id.* at 293-94.)

### F. Dr. Bianchin's Testimony

At the ALJ's request, Dr. Bianchin, an orthopedic specialist, was asked to testify as a medical expert ("M.E.") at the hearing. (*Id.* at 40.) As an M.E., his role was to review and interpret the medical evidence in the record and provide an opinion as to Schmal's impairment and her RFC. (*Id.* at 59.) Bianchin opined that Schmal's back impairment was a severe impairment, constituting degenerative disk disease and slight dorsal scoliosis, but that this impairment was not so severe as to meet or medically equal a listed impairment under the Social Security Act. (*Id.* at 96.) Bianchin testified that such an impairment would likely cause pain, but that in his experience, it would never cause pain of the severity and constancy that Schmal purported to have. (*Id.* at 97.)

Bianchin opined that Schmal's RFC enabled her to perform most sedentary work and some light work, that she can lift up to twenty pounds occasionally and ten pounds frequently, she can stand or walk for two hours of an eight hour workday, and she can sit for six or eight hours in a workday. (*Id.* at 97-98.) Though he recognized that Schmal's statements reflected pain so severe and constant as to preclude sedentary work, he found that her statements were not supported by the laboratory or clinical findings on the record. (*Id.*) He noted that Patey and Madala's RFC opinion, Karri's opinion, and the objective medical evidence affirmatively supported his RFC opinion. He specifically observed that neurological tests had been performed, but they showed no neurological deficits to corroborate severe and constant pain. (*Id.* at 103.) Furthermore, Bianchin took notice of the fact that there were no tests that should have been performed, but were not. (*Id.* at 116.) He stated that Dr. Azaran's opinion is not well supported

6

by objective medical evidence and is contrary to Dr. Karri's clinical findings.[3] (*Id.* at 98-99.) He also noted that Heyer's records are insufficiently detailed and inconsistent with Schmal's testimony. (*Id.* at 101.) He noted that Heyer's recommendation of surgical treatment was "almost bizarre" and inconsistent with the fact that Heyer did not order tests or referrals, as would be consistent with such a recommendation. (*Id.* at 104-06.) Bianchin also concluded that Heyer's prescription regimen for Schmal does not reflect "appropriate practice" and is not supported by the record. (*Id.* at 108-09.)

### G. Schmal's Testimony

At the hearing, Schmal was questioned by her attorney, by the ALJ, by the M.E., and by the vocational expert. (*Id.* at 38-95, 110-111, 117-118.) Schmal testified that she first saw Dr. Heyer for back pain in 1993. (*Id.* at 79.) Schmal stated that Heyer's records from those visits are incorrect because he never prescribed Vicodin for her. (*Id.* at 93-94.) However, Schmal admitted that Heyer may have prescribed Vicodin for her husband. (*Id.*) Schmal became disabled in late 1996, when she bent over to tie her shoe, and was unable to stand straight for six weeks thereafter. (*Id.* at 51.)

Between 1996 and 1999, Schmal stated that Dr. Heyer performed manipulations on her back and prescribed multiple pain relievers: Soma Compound and Tylenol with codeine. (*Id.* at 52.) She acknowledged that there was no record evidence of any such visits, and she stated that Heyer "wasn't very good about filling out papers," but that she thought she saw him "on a pretty regular basis," including occasions when she did not have insurance. (*Id.* at 79-80.) Her

---

[3]     The Court notes that Schmal seems to conclude that Bianchin's references to a "real good" C.E. opinion refer to Dr. McCrohan's opinion. (D.E. 13 at 14). Yet, Dr. McCrohan's opinion was prepared *after* the hearing. (D.E. 9 at 295.) Thus, Bianchin must have been referring to Dr. Karri's opinion because it was the only C.E. opinion in the record when he testified.

condition improved and she returned to work, though she had difficulty straightening after sitting for extended periods. (*Id.* at 52-53.) At times, she had difficulty dressing and walking. (*Id.* at 53.) Her problems resulted in many work absences, sometimes for weeks at a time and up to ten days a month, which resulted in her being fired in February 1999. (*Id.* at 51-54.)

Her first recorded visit with Heyer for back pain, after 1993, was in September 1999. (*Id.* 79-80.) Schmal told Heyer that she was spending six out of every eight hours lying down. (*Id.* at 81.) Heyer recommended physical therapy and traction, but Schmal did not try them because, at first, she did not have insurance and did not realize she could be treated at a hospital without insurance. (*Id.* at 82-83.) Later, when she had insurance, Heyer said therapy would not help and recommended surgery, which Schmal declined because she thought she was "too old." (*Id.* at 52, 55-56.) (At this time, Schmal was approximately forty-five years old.) Schmal considered getting a second opinion, but did not. (*Id.* at 82.) Heyer recommended exercise therapy, but the exercises strained Schmal's back so she no longer does them. (*Id.* at 64-65.) Heyer recommended that Schmal try using a cane, but she did not. (*Id.* at 66.) Heyer recommended an MRI on multiple occasions, but Schmal first refused because she did not have insurance and later, when she had insurance, could not have the MRI covered by insurance because it qualified as a preexisting injury. (*Id.* at 83.) Schmal said that the MRI included in Dr. Heyer's records—which is labeled with her name, birthdate, and medical record number—is not hers, but may be her husband's. (*Id.* at 93-94.)

Dr. Heyer retired after June 2001. (*Id.* 83.) He recommended new doctors to Schmal, but she did not like the one she saw and did not know how to pick another. (*Id.* at 84.) She saw Dr. Azaran in January 2002. (*Id.*)

8

Schmal describes her symptoms as "the same" and "severe" since 1999. (*Id.* at 57, 83.) She states that her pain is constant, worse at some times, and periodically radiates down her left leg. (*Id.* at 86.) She ranks her level of pain as an eight on a ten point scale, with ten denoting a need to seek emergency treatment. (*Id.* at 61-62.) The pain makes her nauseous. (*Id.* at 62.) For relief, Schmal lies down for most of the day and uses ice packs. (*Id.* at 58, 65, 69.) Stretching alleviates her pain somewhat, but walking and standing are still painful. (*Id.* at 59.) Her medications provide limited relief (*id.* at 63), but they make her drowsy and ill. (*Id.* at 59).

She lives with her mother-in-law, husband, and child and is unable to do any household chores including laundry, but she can drive a little and prepare her meals. (*Id.* at 57-58, 73, 85.) Her left leg is weak and causes her to fall approximately three times a week, though she has never been seriously injured. (*Id.* at 65-66.) She can walk only a block. (*Id.* at 67.) She can tolerate sitting for forty-five minutes, but not for eight hours. (*Id.* at 59.) She does not know if she could perform a job that allowed her to alternate between sitting and standing at will. (*Id.* at 77.) She has never been treated for mental or emotional problems, nor has someone suggested to her that she might have such problems. (*Id.* at 77.)

### H. The Vocational Expert's Testimony

Thomas Dunleavy, the vocational expert, testified that Schmal's past work as a telephone answering service operator was sedentary and semi-skilled. (*Id.* at 50, 112.) He testified that her skills in this job would transfer to receptionist jobs. (*Id.* at 113.) Dunleavy asserted that a person who could sit for up to two hours at a time before needing to stretch for ten minutes could perform such work. (*Id.* at 113.) Furthermore, he concluded that a person who needed to stretch for ten minutes following forty-five minutes of sitting could find other work in the economy.

9

(*Id.* at 114.) He said such a person could find employment even if she were non-productive for up to five percent of the workday due to pain or weakness. (*Id.* at 115.)

## II. The ALJ's Decision

On October 24, 2002, the ALJ determined that Schmal was not disabled as defined by the Social Security Act and thus was not entitled to disability benefits. (*Id.* at 19.)[4] In reaching this conclusion, the ALJ conducted the five-step analysis required under 20 C.F.R. §§ 416.920, 404.1520 (2005). First, the ALJ found that Schmal had not engaged in substantial gainful activity since the alleged onset of disability. (D.E. 9 at 32.) Second, the ALJ found that Schmal suffered from degenerative disk disease, a severe impairment as defined by 20 C.F.R. § 404.1521. (*Id.* at 32.) Third, the ALJ found that this impairment did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (*Id.* at 21, 32.) Fourth, the ALJ found that Schmal was able to perform her past work as a telephone answering service operator or alternately, a significant number of other jobs in the national economy. (*Id.* at 33.)

Specifically, the ALJ found that Schmal has the RFC to perform the full range of sedentary work and that she would only seldom experience pain severe enough to render her non-productive at work. (*Id.* at 29-30.) The ALJ made the following findings to support her RFC conclusion: 1) Schmal can lift, push, carry, and pull up to 10 pounds occasionally; 2) she can stand and walk for up to two hours in a work day; 3) she can sit for up to six hours in a workday with normal breaks; 4) she should not climb ladders, ropes, or scaffolds; 5) she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; 6) she should avoid extreme temperatures, unprotected heights, and unguarded hazardous equipment; and 7) she has full fine and gross dexterity in both hands. (*Id.* at 29-30.)

---

[4]     The ALJ's written decision is located at pages 18-33 of the administrative record.

To support her findings, the ALJ considered and cited to all of the doctors' opinions, the objective medical evidence, the vocational expert's opinion, and Schmal's statements. (*Id.* at 22-30.) She found certain evidence, such as Schmal's treating doctors' opinions, to be less credible than other evidence, such as M.E. Bianchin's opinion. (*Id.* at 22-29.) She considered Schmal's statements to warrant "limited credit." (*Id.* at 29.) The ALJ concluded that Schmal is not disabled and not entitled to Disability Insurance Benefits. (*Id.* at 32.)

This Court considers both parties' motions for summary judgment based on the closed factual record. The Commissioner argues that the ALJ's decision should be affirmed because it is free from legal error and supported by substantial evidence. Schmal argues that the ALJ's decision should be reversed for the following reasons: 1) the ALJ committed legal error when weighing the medical opinion evidence; 2) the weight that the ALJ assigned to those opinions was not supported by substantial evidence; 3) the ALJ committed legal error by failing to develop the record to resolve ambiguities surrounding the medical bases for Schmal's treating doctors' opinions; 4) the ALJ committed legal error in making her credibility determinations; 5) the ALJ's credibility determinations were patently wrong[5]; 6) the ALJ committed legal error by "playing doctor"; and 7) the ALJ's RFC finding was not supported by substantial evidence. As explained below, the Court denies Schmal's motion and grants the Commissioner's motion.

## LEGAL STANDARD

An ALJ's factual findings will be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). Substantial

---

[5]     Actually, Schmal argues that the credibility determinations are not supported by "substantial evidence." (D.E. 16 at 9.) Though this argument is meritless because it is based on the wrong standard, the Court believes that Schmal implicitly raised the "patently wrong" argument by reference to the Commissioner's argument and by alleging "deep logical flaws" in the ALJ's credibility findings. (*Id.* at 9-11.)

evidence is more than a "mere scintilla," less than a preponderance, and "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, an ALJ's opinion that is supported by substantial evidence will be affirmed even where substantial evidence also supports a contrary finding (*INS v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992); *Kahn v. Secretary of Labor*, 64 F.3d 271, 276 (7th Cir. 1995)) or where reasonable minds could disagree on whether a claimant is disabled. *See Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

An ALJ's credibility findings receive even more deference, and will be affirmed unless "patently wrong." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). In contrast, if the ALJ commits legal error, reversal is mandated (*Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)), unless substantial evidence supports the conclusion under the correct legal standard. *See Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993).

In addition, where an ALJ denies benefits, she must articulate her reasoning sufficiently to enable an informed review. *See Diaz v. Carter*, 55 F.3d 300, 307-08 (7th Cir. 1995). To satisfy the minimum articulation standard, she need not discuss every piece of evidence in the record, though she must consider all relevant evidence and cannot disregard an entire line of evidence contrary to her findings. *See id.* at 308.

## DISCUSSION

To determine whether a claimant is disabled, the ALJ must conduct a sequential five-step inquiry. 20 C.F.R. § 1520(a)-(f); *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The ALJ must determine, in order: 1) whether claimant is currently unemployed; 2) whether she has a severe impairment; 3) whether her impairment equals any impairment listed in the relevant

regulations;[6] 4) whether she can perform her past relevant work; and 5) whether she is capable of performing other work in the national economy. 20 C.F.R. § 1520(a)-(f); *Zurawski*, 245 F.3d at 885. In making these five determinations, the ALJ will consider relevant evidence such as objective medical evidence, the claimant's medical history, statements from treating and examining physicians, statements from the claimant, and the findings and opinions of state agency medical experts. 20 C.F.R. § 404.1512 (b).

## I. The ALJ's Evaluation of the Medical Opinions Is Proper and Supported by Substantial Evidence.

Schmal argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly weighed the medical opinion evidence. (D.E. 16 at 2.) Specifically, Schmal argues: 1) that the ALJ committed legal error by adopting M.E. Bianchin's opinion as the ultimate determination of Schmal's disability or, alternately, as the controlling opinion (D.E. 13 at 14; D.E. 19 at 2; D.E. 16 at 1, 6); 2) that the ALJ's weighing of the medical opinions is not supported by substantial evidence or sufficiently articulated (D.E. 16. at 2); and 3) that the ALJ disregarded significant evidence in her weighing of the medical opinions (*id.* at 2). As explained below, the Court is unpersuaded by these arguments and affirms the ALJ's findings regarding the weight assigned to the various medical opinions.

### A. The ALJ Did Not Adopt M.E. Bianchin's Opinion as the Ultimate Determination of Schmal's Disability

The ALJ did not commit legal error by adopting Dr. Bianchin's testimony as the ultimate determination of disability. To the contrary, the ALJ conducted a clearly articulated disability analysis in which she evaluated Bianchin's testimony as opinion evidence and considered it alongside the entire record. To determine whether a claimant is disabled, the ALJ must conduct

---

6    The relevant listed impairments are set forth in 20 C.F.R. § 404, Subpt. P, App. 1 (2005).

the sequential five-step inquiry set forth in 20 C.F.R. § 404.1520 (a)-(f). *See Zurawski*, 245 F.3d at 885. Though an M.E.'s findings cannot be considered to be the ultimate determination of disability, those findings are relevant to the ALJ's determination as to the steps of the inquiry, and they must be considered. 20 C.F.R. § 404.1527 (e)(1), (f)(2)(i); 20 C.F.R. § 404.1512 (b)(6). Specifically, the ALJ may request and consider an M.E.'s opinions as to whether the Plaintiff is disabled, the nature and severity of impairments, and whether the impairment equals the requirements of any impairment listed in Appendix 1. 20 C.F.R. § 404.1527 (e)(1), (f)(2)(iii). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 (2005). The M.E.'s findings are weighed according to the factors set forth in 20 C.F.R. § 404.1527(a)-(e). 20 C.F.R. § 404.1527 (f)(2).

Here, the ALJ did not adopt Bianchin's findings as her ultimate determination of disability. On the contrary, to make that determination, she clearly conducted each step of the five-step analysis. She articulated reasons for each of her five findings and those reasons are supported by substantial evidence in the record. Dr. Bianchin's testimony is the type of opinion evidence that 20 C.F.R. § 404.1527 (f)(2)(iii) directs the ALJ to consider in making those findings. *See id.* Nonetheless, the ALJ's findings are not based exclusively on Bianchin's testimony, but also on *all* of the medical records and opinions (D.E. 9 at 22-29), Schmal's statements (*id.* at 20, 28, 30), objective medical evidence (*id.* at 20), the ALJ's observations of Schmal at the hearing (*id.* at 29), and testimony by the vocational expert (*id.* at 30-32). The ALJ's thorough analysis and her reliance on the record indicate that she did not rely exclusively on Bianchin's opinion to make her ultimate determination of disability. Thus, the Court finds no legal error because the ALJ did not adopt Bianchin's testimony as the ultimate determination of disability.

### B. The ALJ's Weighing of the Medical Opinions Accords with the Regulations and Is Supported by Substantial Evidence

14

In making her RFC finding, the ALJ considered all of the doctors' opinions, weighing each according to the proper factors and articulating her reasons for according more or less weight to each opinion. Also, her findings as to weight are supported by substantial evidence.

### 1. The ALJ Properly Denied Controlling Weight to Any of the Medical Opinions

The ALJ's denial of controlling weight to Dr. Azaran's opinion was proper. In support of her argument to the contrary, Schmal cites 20 C.F.R. § 404.1527(d)(3) for the proposition that "the ALJ is required to give controlling weight to a medical source who 'presents relevant evidence to support an opinion, particularly medical signs and laboratory findings.'" (D.E. 16 at 8 (*quoting* 20 C.F.R. § 404.1527(d)(3)).) The Court disagrees with Schmal's characterization of this rule. The cited provision merely sets forth one of several factors to be considered in the evaluation of medical opinions. *See* 20 C.F.R. § 404.1527(d). It does not refer to the assignment of controlling weight and certainly does not mandate it. *See id.* at § 404.1527(d)(3).

In reviewing the ALJ's assignment of controlling weight, the Court looks to SSR 96-2p. A medical opinion cannot be accorded controlling weight unless the opinion is from a treating physician, is well supported by medically acceptable clinical and laboratory techniques, and is "not inconsistent" with substantial evidence in the record. SSR 96-2p, at *1; *see also Dixon*, 270 F.3d at 1177; *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). A person with medical expertise is required to interpret medical evidence and determine whether a medical opinion lacks support or is inconsistent with the record. SSR 96-2p, at *1-3. The standard to find an opinion inconsistent is low and does not require a preponderance of evidence proving that the opinion is wrong. *See id.* at *3.

Here, citing directly to the regulations, the ALJ articulated that she denied Dr. Azaran's opinion controlling weight because the opinion was not well supported by his progress notes or his objective examination findings and was inconsistent with the conservative treatment he had prescribed. (D.E. 9 at 27.) In addition, the record, as cited within the ALJ's opinion, reveals additional inconsistencies between Dr. Azaran's RFC opinion and Schmal's full medical record and also with the opinions of Drs. Bianchin, McCrohan, Patey, and Madala. (*Id.* at 27-28.) Notably, the ALJ's reliance on the M.E.'s testimony in identifying these inconsistencies is entirely proper because the regulations require that such determinations be made by a medical expert and Dr. Bianchin is precisely such an expert. 20 C.F.R. § 404.1529(a). Thus, because the ALJ articulated logical reasons for her findings and her reasons are supported by substantial evidence in the record, and because Dr. Azaran's opinion is inconsistent with substantial evidence, the ALJ's denial of controlling weight to Dr. Azaran's opinion is not any reversible error.

Schmal also argues that the ALJ committed legal error by treating M.E. Bianchin's opinion as controlling. (D.E. 13 at 14; D.E. 16 at 1.) Although Schmal's reasoning is correct in that the M.E. was not a treating physician and thus his opinion cannot have controlling weight, the Court disagrees with Schmal's characterization of the facts. The ALJ did not treat Dr. Bianchin's opinion as controlling. As opposed to ascribing some, lesser form of significance to an opinion, "controlling weight" describes the weight given "to a medical opinion from a treating source that *must* be followed." SSR 96-2p, at *2. Though the ALJ assigned M.E. Bianchin's opinion "greater credit," she also assigned "some weight" to the opinions of Drs. Azaran and McCrohan and "little weight" to those of Drs. Patey and Madala. (D.E. 9 at 10-11). The ALJ's

16

clearly articulated balancing of multiple medical opinions indicates that she did not assign one controlling weight. Thus, the Court finds no legal error.

## 2. The ALJ's Weighing of the Medical Opinions Was Proper

The ALJ's weighing of the medical opinions was proper. The ALJ must weigh medical opinion evidence in accordance with the factors articulated in 20 C.F.R. § 404.1527(d). *See* 20 C.F.R. § 404.1529(c)(1). A treating physician's opinion may still be accorded some weight and deference even if it is not controlling. SSR 96-2p, at *1. Generally, the opinion of the treating physician is accorded more weight than that of a non-treating physician where: 1) the treating physician has seen the claimant multiple times and has sufficiently obtained a longitudinal picture of the claimant's impairment; 2) the treating physician has reasonable knowledge of the impairment based on the types of examinations and testing performed or ordered from specialists or independent laboratories; 3) the treating physician's opinion is well supported by relevant evidence such as medical signs and laboratory findings;[7] 4) the treating physician's opinion is consistent with the record as a whole;[8] 5) the treating physician's opinion relates to his area of specialty; and 6) other factors support the opinion, such as the treating physician's familiarity with the evidentiary requirements of disability programs and the claimant's case record. 20 C.F.R. §§ 404.1527(d)(2), (3), (6). Nonetheless, there is no requirement that a treating physician's opinion be entitled to more weight that a consulting physician's.[9] *See Books v.*

---

[7]     This factor is one of degree: the more support the opinion provides, the more weight it warrants. 20 C.F.R. § 404.1527(d)(3).

[8]     This factor is also one of degree: the more consistent the opinion is, the more weight it warrants. 20 C.F.R. § 404.1527(d)(4).

[9]     Schmal cites to 20 C.F.R. § 404.1527(d)(1) for the contrary proposition that, "[t]he ALJ must evaluate the examining relationship of a CE with the claimant and 'give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined

*Chater*, 91 F.3d 972, 979 (7th Cir. 1996). In fact, a treating physician's opinion can be rejected where it is based on a claimant's non-credible subjective allegations or where it is inconsistent internally or with the record. *See Diaz*, 55 F.3d at 308 (rejecting opinion based on subjective allegations); *Knight v. Chater*, 55 F.3d 309, 313-314 (7th Cir. 1995). Thus, in the end, 'it is up to the ALJ to decide which doctor to believe . . . subject only to the requirement that the ALJ's decision be supported by substantial evidence." *Books*, 91 F.3d at 979.

In determining the weight afforded to a non-treating physician's opinion, the ALJ considers the aforementioned factors, as well as whether the physician has examined the claimant. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where treating and consulting doctors disagree, the ALJ decides which opinion receives more weight. *See Dixon*, 270 F.3d at 1178. Though the ALJ must consider all the evidence supporting a medical opinion and articulate reasons for assigning it more or less weight, she is not required to address every single factor or to comment on every piece of evidence. *See Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988). The fact that an ALJ does not adopt some or any part of a physician's opinion does not mean that the ALJ failed to consider that opinion properly. *See Books*, 91 F.3d at 979. The reviewing court will not reweigh evidence or substitute its own judgment for the ALJ's. *See Brewer*, 103 F.3d at 1390.

Here, the ALJ considered all of the medical opinions, balanced the requisite factors to determine the weight ultimately accorded each one, and articulated specific reasons for her

___

you.'" (D.E. 19 at 3.) With all due respect, the Court believes that Schmal mischaracterizes this rule. To be clear, physician opinions are evaluated according to the fact specific balancing of the many factors set forth in 20 C.F.R. § 404.1527(d). Although the ALJ will often assign more weight to the opinion of an examining physician than that of a non-examining physician, she is by no means required to do so. *See* 20 C.F.R. § 404.1527(d)(1) (stating that examining sources "[g]enerally" are assigned more weight than non-examining sources).

findings of their weight. (D.E. 9 at 27-28.) In expressly according Dr. Azaran's opinion "some" weight, the ALJ noted the following reasons: 1) his opinion was not well supported by his objective examination findings or his progress notes; 2) his opinion was internally inconsistent with his conservative recommendations for treatment; 3) his opinion was based primarily on Schmal's non-credible subjective complaints rather than objective medical evidence; 4) Dr. Azaran had only seen claimant two times before making his opinion and thus did not have a longitudinal treatment history with her; and 5) Dr. Azaran's expertise was in the unrelated field of nephrology. (*Id.* at 27.) In giving Dr. McCrohan's opinion "some weight," the ALJ noted that: 1) she was a neurologist; 2) her opinion was based in part on Schmal's non-credible subjective complaints rather than objective medical evidence; and 3) she was not familiar with Schmal's complete medical records. (*Id.*)

In expressly according Dr. Bianchin's opinion "some weight" and specifically, "greater credit" that Dr. McCrohan's, the ALJ noted that: 1) he specializes in orthopedics and has treated many patients with Schmal's particular ailment; 2) his opinion is well supported by the objective medical evidence; 3) as a medical expert and non-examining state physician, he is quite familiar with the evidentiary requirements of disability programs; and 4) he is familiar with Schmal's medical records. (*Id.* at 27-28.) Although the ALJ did not articulate precisely how much weight she gave Dr. Heyer's opinion, she considered it and provided reasons for discounting his findings. (*Id.* at 22-26.) Specifically, she noted that: 1) he failed to articulate Schmal's specific limitations; 2) his opinion was not well supported by the objective medical evidence; 3) his recommended surgical treatment was internally inconsistent with the fact that he never referred Schmal to a specialist who could have performed the procedure and externally inconsistent with the objective medical evidence and with M.E. Bianchin's testimony; and 4) his pharmaceutical

treatment of Schmal was inconsistent with the objective medical evidence and with M.E. Bianchin's testimony. (*Id.* at 26-27.) In addition, the record contains substantial evidence to support the ALJ's discrediting of Heyer's opinion: his records are likely incomplete, as Schmal herself stated; his records may reflect Schmal's husband's treatment rather than hers; Heyer's impairment form is supported by an MRI Schmal claims she never had; and his treatment of Schmal was "bizarre" and not "appropriate practice." (*Id.* at 105, 108.)

Although Schmal cites record evidence and factors that contradict the ALJ's findings regarding the weight of the medical opinions, those are not determinative. (D.E. 16 at 3-9.) It is the ALJ's role to evaluate facts and to weigh evidence (*Perales*, 402 U.S. at 399-400) and her findings will be affirmed so long as her reasoning is articulated and supported by substantial evidence. *See Pope*, 998 F.2d at 486. Because reasonable minds can disagree on the significance of conflicting and inconsistent evidence, the fact that substantial evidence supports one view does not necessarily establish that substantial evidence cannot also support another. *See Elias-Zacarias*, 502 U.S. at 481 n. 1 (1992); *Kahn v. Secretary of Labor*, 64 F.3d 271, 276 (7th Cir. 1995). Though the ALJ cannot disregard an entire line of evidence, she need not discuss every fact in the record,. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Furthermore, the fact that an ALJ ultimately rejects an opinion or line of evidence does not mean that she has failed to consider it properly. *See Books*, 91 F.3d at 979; *Connour v. Massanari*, 173 F. Supp. 2d 785, 797 (N.D. Ill. 2001).

Here, the ALJ has not ignored an entire line of evidence. Though she may not have addressed every single piece of evidence, such as some of the individual reasons for finding Dr. Heyer's opinion to be unclear, she noted most of Schmal's supporting evidence and articulated her reasons for crediting or discrediting it. Thus, because the ALJ's consideration of the medical

opinions complies with the regulations, is clearly articulated, is supported by substantial evidence, and does not ignore any entire line of evidence, it is affirmed.

## II. The ALJ Did Not Fail to Develop Schmal's Medical Record

Schmal argues that the ALJ failed to adequately develop the record because she did not request clarification from the medical sources whose opinions she deemed unsupported, she did not request the additional tests recommended by the C.E., and she did not request psychological testing to determine whether Schmal suffers from a somatoform[10] impairment. (D.E. 16 at 4-5; D.E. 13 at 14-15.) The Court respectfully disagrees.

"[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); 20 C.F.R. § 416.912(c)(2000); *see also* 20 C.F.R. § 404.1512(a), (c). Yet, the ALJ has "a duty to develop a claimant's medical record." *Id.* In Social Security proceedings, the ALJ fulfills this duty by asking questions and investigating facts for and against the claimant, taking an inquisitorial role rather than an adversarial one. *See Sims v. Apfel*, 530 U.S. 103, 110 (2000). The ALJ may also be required to recontact a medical source whose opinion is so incomplete as to preclude a disability determination or that contains a conflict or ambiguity "that must be resolved." 20 C.F.R. § 404.1512(e)(1). Nonetheless, the ALJ need not contact the medical source if past experience reveals that the source will not or cannot provide the necessary clarification. *See id.* at (2). In that case, the ALJ will develop the record by having a C.E. examine the claimant (*id.*) or by consulting an M.E. *See Green v. Apfel*, 204 F.3d 780, 782 (7th

---

[10]     Somatoform disorders are "psychiatric disorders characterized by physical symptoms that suggest but are not fully explained by a physical disorder and that cause significant distress or interfere with social, occupational, or other functioning." *The Merck manual of Diagnosis and Therapy* 15.186 (1995). In lay terms, somatoform disorders are "psychosomatic" illnesses. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

21

Cir. 2000); *Flener*, 361 F.3d at 448. Because there will always be one more test or examination that the ALJ might have sought "the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener*, 361 F.3d at 448; *Kendrick v. Shahala*, 998 F.2d 455, 458 (7th Cir. 1993). Mere conjecture or speculation that additional evidence may have been obtained does not warrant remand. *Binion v. Shalala*, 13 F.3d 243, 245-46 (7th Cir. 1994).

Here, the ALJ fulfilled her duty to develop the record by making inquiries of all the witnesses at the hearing, by requesting two consultative examinations, by consulting with a medical expert and specifically asking him if more tests were required, by ordering review of the record by two more doctors, and by holding the record open after the hearing to allow Schmal to submit any objective medical evidence from her treating doctors that might substantiate their opinions. The ALJ was not required to order more tests when the existing record provided her with substantial evidence to make and support her determination of disability. Specifically, she was not required to recontact Dr. Azaran because his opinion was not so unclear as to preclude her determination or require clarification and thus, his clarification was not mandated by the regulations. Moreover, any such putative clarification was arguably impracticable because Dr. Azaran manifested an unwillingness to complete the RFC form with sufficient detail,[11] despite the fact that the form states in bold letters on the first page, "IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY ASSESSED REDUCTION IN CAPACITY: THE USEFULNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT OF WHICH YOU DO THIS." (D.E. 9 at 283.) Quite simply, the form Dr. Azaran filled out enjoyed diminished utility not because it was ambiguous, but because of its lack of clarity. In

---

[11] To support all of his findings, Dr. Azaran merely wrote "see above" repeatedly, referring back to two lines of medical findings which, according to other testimony, did not support his other findings. (D.E. 9 at 98-99, 283-285.)

22

addition, in regard to Schmal's alleged somatoform disorder, the ALJ asked Schmal whether she

had been treated for mental or emotional problems and whether anyone had ever suggested that

she might have such a problem. Schmal answered "no" to both questions and her attorney

presented no positive evidence on the issue.[12] Also, Bianchin indicated that no further testing

was required. Thus, because the ALJ made appropriate inquiries of the witnesses, ordered

multiple consultative examinations, and consulted with a medical expert, the Court finds no error

in the her development of the record.

### III. The ALJ's Credibility Finding Does Not Constitute Legal Error and Is Not Patently Wrong

The ALJ found that Schmal's statements regarding her constant and extreme back pain

were largely non-credible. Schmal argues that the ALJ committed legal error because she did

not make her credibility determination according to the factors set forth in SSR 96-7p and 20

C.F.R. § 404.1529(c). (D.E. 13 at 8.) Specifically, Schmal argues that the ALJ committed the

following errors: 1) she relied almost exclusively on M.E. Bianchin's opinion and disregarded

Schmal's reasonable explanations for her inconsistent statements and for her irregular treatment

history (D.E. 16 at 11; D.E. 13 at 10-11); 2) she disregarded an entire line of evidence

corroborating her statements; and 3) she failed to develop the record (D.E. 13. at 8-9). In

addition, Schmal argues that the ALJ's opinion is not supported by substantial evidence because

---

[12]     The Court acknowledges Schmal's argument that the M.E.'s testimony regarding the
*absence* of objective medical evidence supporting Schmal's pain complaints should be
construed as affirmative evidence of a somatoform disorder. (D.E. 13 at 14-15.) However, the
Court respectfully concludes that this roundabout sort of "evidence"—*i.e.* the failure to present
objective evidence to confirm subjective allegations—is not sufficient affirmative evidence to
require any remand, given the overall record, the exhaustive nature of the ALJ's analysis, and the
deferential standard of review prescribed by precedent.

the ALJ's reasoning has deep logical flaws and because she improperly "played doctor." (D.E. 16 at 9-11; D.E. 13 at 11.) The Court respectfully disagrees.

Because severe pain can be debilitating, once the ALJ has determined that a claimant suffers from a severe medical impairment which could reasonably produce her symptoms, the ALJ must determine the intensity and persistence of the claimant's pain. 20 C.F.R. § 404.1529(c)(1).[13] Although a claimant's statements regarding severe debilitating pain cannot be deemed non-credible solely because there is no objective medical evidence to corroborate them, where no such evidence exists, the ALJ must make a finding on the credibility of claimant's allegations. *See id* at (c)(2), (4); 416.929(c)(4); SSR 96-7p, at *2. To make her credibility finding, the ALJ considers all available evidence in relation to those statements, such as: 1) objective medical evidence; 2) the claimant's medical history; 3) the claimant's statements; 4) medical opinions[14]; 5) the claimant's daily activities; 6) the location, duration, frequency, and intensity of the claimant's pain; 7) precipitating and aggravating factors; 8) the type, dosage, effectiveness, and side effects of the claimant's pain medications; 9) the claimant's other treatment for pain; 10) the claimant's other pain relief measures, such as reclining, resting, or standing periodically; and 11) other factors concerning the claimant's pain-related functional

---

[13]     Schmal argues that according to 20 C.F.R. § 404.1529, "The M.E. is required to accept the Plaintiff's symptoms and statements about the intensity and persistence of pain as long as they are reasonably related to the impairment." (D.E. 9 at 10.)  The Court disagrees with this characterization.  The rule articulates a multi-factor balancing to evaluate an individual's intensity and persistence of pain; the Court is not required to blindly accept a claimant's statements about pain.  20 C.F.R. § 404.1529(c).

[14]     Medical opinions include opinions from treating and examining doctors, as well as "other persons." SSR 96-7p, at *1.  Other agency rulings clarify that "other persons" include medical experts. *See* SSR 96-6p, at *1.  The value of a particular medical opinion in bolstering or undermining credibility is relative to the weight that the ALJ assigns that opinion under the aforementioned balancing treatment set forth in 20 C.F.R. § 404.1527.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(1)-(4); 416.929(c)(3); SSR 96-7p, at *2-3; *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

The regulations provide additional guidance for weighing these factors. For example, objective medical evidence concerning the intensity and persistence of pain, though not required, is particularly useful and must be considered where available. SSR 96-7p, at *6. Also, a statement that is inconsistent with other evidence is generally not credible. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, at *5 (2005). Yet, if a claimant's statements are merely inconsistent with each other, an ALJ cannot deem them non-credible unless she has reviewed the record and determined that the inconsistencies cannot be explained. *See* SSR 96-7p, at *5. Although an ALJ must consider these factors and all relevant evidence in making her credibility finding, she does not need to address every piece of evidence or every aforementioned factor in making that finding. *Diaz*, 55 F.3d at 309; *Clay v. Apfel*, 64 F. Supp. 2d 774, 781 (N.D. Ill. 1999). On the contrary, the ALJ's credibility finding will be upheld as long as it is reasonably articulated, finds some record support, and is not patently wrong. *Kelly v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989).

## A. The ALJ's Credibility Findings Do Not Constitute Legal Error

Here, the ALJ did not commit legal error because she considered the entire record, not just Bianchin's opinion, and she articulated several of the aforementioned factors to support her finding that Schmal's statements were not very credible. Specifically, the ALJ noted that the objective medical evidence, Schmal's medical history, and the most credible medical opinion were inconsistent with Schmal's statements. These factors alone are sufficient to affirm the ALJ's credibility finding.

25

In addition, the ALJ also noted Schmal's inconsistent treatment history and that Schmal's statements regarding her left leg being "especially" painful and "always" giving out on her were inconsistent with her other statements seeking repeated treatment for right leg pain. (D.E. 9 at 29.) The ALJ did not disregard Schmal's explanations for these inconsistencies, but rather considered them and found them to be unreasonable. Schmal's explanation, that the inconsistencies between her statements regarding right versus left leg pain resulted from the ALJ "misunderstand[ing]" her testimony, is not reasonable because the ALJ's interpretation of those statements was based on logical inference and was expressly supported by Schmal's other statements at trial and to her doctors that her symptoms have remained substantially unchanged since 1996 and that her pain is "always" on the right. Thus, the ALJ's interpretation is not patently wrong. Similarly, the ALJ found Schmal's explanation regarding her inability to afford regular treatment to be unreasonable because Schmal had testified to having insurance for at least some of the period during which she did not seek treatment for her allegedly debilitating pain. Although the ALJ did fail to address Schmal's other explanations for her inconsistent treatment history, including her not being advised of alternate treatment options, not being aware of how to procure a new doctor, and not taking medications due to side affects, the Court does not find that this failure warrants remand because the ALJ cannot be required to anticipate every possible explanation, because there is no explanation for why Schmal did not seek treatment for her regular falls, and moreover, because this factor was not in itself determinative.

The record highlights additional inconsistencies between Schmal's statements and other evidence: specifically, Dr. Heyer's records. Schmal stated she has never been prescribed Vicodin and that she never had an MRI in May 2000. Heyer's records indicate the opposite. Though Schmal attributes this inconsistency to Heyer's confusion of her and her husband's

records, this explanation is not reasonable. Not only do these records clearly denote Schmal's full name, her birth date, and her medical record number, their contents are strikingly consistent with Schmal's overall history and other test results. Furthermore, the MRI she disowns was prepared by a different doctor, a radiologist, and bears the same identifying indicia.

Furthermore, the ALJ did not disregard an entire line of evidence supporting Plaintiff's statements. As discussed *supra*, the ALJ considered the entire record and gave explicit reasons whey she assigned some, but less, weight to the medical opinions of Drs. Heyer, Azaran, and McCrohan. The fact that the ALJ discounted portions of those opinions which were based on Schmal's subjective complaints rather than on objective medical findings does not suggest that she disregarded the opinions entirely. Similarly, the ALJ did not disregard a line of evidence regarding Plaintiff's alleged somatoform disorder. As discussed *supra*, there was no affirmative evidence of a somatoform disorder and in fact, Schmal testified that she had never been diagnosed with a mental or emotional disorder. Consequently, because the ALJ's credibility finding is clearly articulated, is based on the appropriate factors, and does not disregard reasonable explanations or an entire line of evidence, it does not constitute legal error.

### B. The ALJ's Credibility Finding Is Not Patently Wrong

Although Schmal argues that the ALJ's credibility finding is not supported by substantial evidence, that argument is unpersuasive because it is based on the wrong legal standard. The ALJ's credibility finding will not be overturned unless patently wrong. *See Dixon*, 270 F.3d at 1177. The Court will address Schmal's arguments as if they were made under the correct standard, although the result would be the same in any event.

The ALJ's articulation of multiple factors from the record to support her credibility finding proves that it is not patently wrong. In addition, Schmal's citation (D.E. 16 at 10) to

*Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), is inapposite because the ALJ's finding is not plagued by "deep logical flaws," unlike the ALJ's finding at issue in *Carradine*. *See Carradine*, 360 F.3d at 756.

In *Carradine*, the claimant applied for disability benefits, having been diagnosed with a somatization[15] disorder. *Id.* at 754. The ALJ acknowledged that the claimant suffered from such an impairment, yet she discredited the claimant's statements regarding severe psychosomatic pain because the pain was not supported by objective medical evidence. *See id.* Reviewing the ALJ's denial of benefits, the Seventh Circuit noted that a somatization disorder is, by definition, *not* supported by objective medical evidence. *See id.* Consequently, the ALJ's reliance on the absence of such evidence to support her credibility finding, while acknowledging that the claimant had an ailment that could not produce such medical evidence, was illogical and reversible error. *See id.*

In contrast, here, until this appeal, Schmal has never argued that her impairment is caused by a somatoform disorder. Schmal described the onset of her impairment as a physical rather than psychological event: bending to tie her shoes. In fact, she presented no positive evidence of a somatoform disorder and, when the ALJ asked her at the hearing whether she had ever been treated for a mental or emotional disorder or whether anyone had ever suggested that she might have such a disorder, she explicitly answered, "No." (*Id.*) Thus, unlike *Carradine*, there is no obvious reason why Schmal's pain could not be supported by objective medical evidence and it was not illogical for the ALJ to consider the absence of such evidence, in addition to other

---

[15]     A somatization disorder is one type of somatoform disorder. It is a chronic, severe psychiatric disorder resulting in significant physical complaints, such as pain, that cannot be explained fully by a physical disorder. *The Merck Manual of Diagnosis and Therapy* 15.186 (1995). The *Carradine* court considered somatization and somatoform disorders to be synonymous. *See* 360 F.3d at 754.

evidence, to support her credibility finding. Consequently, the ALJ's credibility finding is not patently wrong.

## C. The ALJ Did Not "Play Doctor" in Making Her Credibility Finding

Schmal contends that the ALJ played doctor when she concluded that Schmal's statements regarding "lying down at home throughout almost all her waking hours" were not credible. (D.E. 13 at 11.) The ALJ reasoned that atrophy or reduced muscle strength would be necessarily incident to Schmal's alleged immobility, and that Schmal's statements were inconsistent because the medical findings reflected no such atrophy or reduction in strength. (D.E. 9 at 29.)

The ALJ can permissibly rely on her observations regarding the severity of a claimant's pain and such observations are credibility determinations entitled to considerable weight. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). Nonetheless, an ALJ cannot "play doctor" by substituting her opinions for those of a physician or by making judgments that are unsupported by objective medical evidence. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996). Typically, however, reversal is not appropriate unless the ALJ also failed to address relevant evidence, *Dixon,* 270 F.3d at 1177-78, or she made a medical conclusion without relying on any objective medical evidence whatsoever. *See Green*, 204 F.3d at 782. In fact, where an ALJ articulates supporting medical evidence in her alleged "medical opinion," she does not play doctor. *Dixon,* 270 F.3d at 1178; *Wych v. Barnhart*, No. 02 C 2818, 2003 WL 21654251, at *4-5 (N.D. Ill. 2003).

Here, Plaintiff's definition of "playing doctor" is too expansive. An ALJ is obligated to gather information and draw conclusions based on that information. Plaintiff's definition would seem to call into question the very directive with which ALJs are charged. Simply, the ALJ did

29

not "play doctor" because she cited to objective medical evidence supporting her opinion, namely, the absence of muscle atrophy or reduced strength. In addition, the ALJ considered the entire record and did not fail to address other relevant evidence. Thus, the ALJ did not "play doctor" and her credibility determination is affirmed.

## IV. The ALJ's Findings as to Schmal's RFC and Her Capacity for Past Relevant Work and Other Jobs in the Economy Are Supported by Substantial Evidence

Schmal argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ based her opinion on Bianchin's opinion and discredited the RFC opinions of Drs. Azaran, Heyer, and McCrohan "without providing good reasons for doing so." (D.E. 16 at 14.) In addition, Schmal argues that the ALJ substituted her own judgment and played doctor by concluding that Schmal will "seldom" experience distracting pain at work.[16] (*Id.* at 14-15.) The Court disagrees.

The disputed aspects of the ALJ's RFC finding— that Schmal can perform sedentary work; can lift, carry, push, or pull up to ten pounds occasionally; can stand or walk up to two hours a day; can sit up to six hours of an eight hour work day if allowed to stand or walk every two hours; and that she will seldom experience pain so severe as to make her non-productive— are expressly articulated and supported by substantial evidence. Specifically the ALJ cited to the opinions of Drs. Bianchin, Patey, and Madala. (D.E. 9 at 26-28.) These opinions are consistent with the ALJ's RFC findings. In fact, they are less conservative than the ALJ's opinion in that

---

[16]     Schmal also argues that the ALJ played doctor by assuming in her hypotheticals to the vocational examiner that Schmal would be non-productive for no more than five percent of the work day. The Court makes no finding regarding these hypotheticals because the ALJ did not did not expressly base her RFC finding on a five percent standard, and she did not find that Schmal, specifically, was unproductive for less than five percent of the time. Regardless, the Court believes that this would not have been an impermissible inference warranting remand or reversal because a person who is nonproductive for less than five percent of the time could also rationally be characterized as one who seldom experiences distracting pain.

30

they opine that Schmal can perform light work in addition to sedentary work, and that she can carry up to twenty pounds occasionally. (*Id.* at 27.) Dr. McCrohan's RFC opinion, which states that Schmal can lift up to ten pounds and needs to be able to sit and stand periodically at work, also supports the ALJ's RFC findings. (*Id.*)

In addition, the record evidence consistently and overwhelming suggests that Schmal's most serious impairment is degenerative disk disease. Bianchin explained that degenerative disk disease does not cause debilitating pain like Schmal describes. (*Id.* at 26.) Thus, the medical evidence indicates that Schmal suffers from an impairment that should not cause her debilitating pain. That conclusion gives rise to the ALJ's logical inference that Schmal would only seldom experience distracting pain during the workday. This inference does not equate to playing doctor because it is based on objective medical evidence, all of the doctors' diagnoses and all the MRI results, and because the ALJ did not ignore relevant evidence in making it. Specifically, the ALJ's reliance on certain evidence more than other evidence is based on her underlying findings as to the weight of the various medical opinions and as to credibility. The Court has affirmed those underlying findings, acknowledging the "good reasons" on which they are based. Thus, because the ALJ's RFC finding is supported by substantial evidence, it is affirmed.

Schmal does not dispute the ALJ's findings that Schmal is capable of performing her past relevant work or a significant number of other jobs in the economy, other than to dispute the RFC finding on which those subsequent findings are based. Because the Court has affirmed those RFC findings, the Court also affirms the undisputed subsequent findings as to Schmal's capacity for past relevant work and other jobs.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, and
Plaintiff's motion for summary judgment is denied.


So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: April 7, 2005